IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 10-cv-00457-WDM-KMT

TOM SWEENEY, d/b/a TOM'S WINDOWS AND DOORS, LLC, a Colorado limited liability company,

    Plaintiff,

v.

MARVIN WINDOWS, INC., a Minnesota corporation,
BUILDING MATERIAL DISTRIBUTORS, INC., a California corporation,
FRANK MARVIN, individually and as an officer of Marvin Windows,
GORDON "DUFF" MARSHALL, individually and as an employee of Marvin Windows,
MIKE GARRISON, individually and as an employee of Building Material Distributors,

    Defendants.

## ORDER ON PARTIAL MOTION TO DISMISS

Miller, J.

This matter is before me on the Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) (Docket No. 4) filed by Defendants. Plaintiff opposes the motion. After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the partial motion to dismiss will be granted.

### Background

This is primarily a breach of contract case with jurisdiction premised on diversity pursuant to 28 U.S.C. § 1332. According to the Plaintiff's Complaint (Docket No. 1), Plaintiff is a former dealer of windows and doors manufactured by Defendant Marvin Windows, Inc. ("Marvin") and distributed by Building Material Distributors, Inc. ("BMD"). Plaintiff began working as a sales representative for Marvin around 1979. Complaint ¶ 27.

After a marketing plan he developed for Colorado was turned down, he resigned from the company. *Id.* In 2003, he established Tom's Windows and Doors. *Id.* ¶ 31. At the time, the regional distributor he used for Marvin products was a company called Boddington Lumber Company ("Boddington"). *Id.*

Plaintiff alleges that in October 2005, he met with Defendant Gordon "Duff" Marshall ("Marshall"), the national sales manager for Marvin, and that the parties reached an agreement that forms the basis of this lawsuit (the "Agreement"). *Id.* ¶ 33. Pursuant to the Agreement, as alleged by Plaintiff, Plaintiff's business would become the first "Marvin Design Gallery" west of the Mississippi River, a category of dealership that conferred certain benefits on both parties. *Id.* Plaintiff asserts that under the Agreement, Plaintiff would sell exclusively Marvin products. *Id.* In return, Marvin agreed that Plaintiff would have the only Marvin Design Gallery within a 50 mile radius, that Marvin would provide Plaintiff with sales leads and advertising support, and that Plaintiff would receive a substantial price break consistent with the status of a Marvin Design Gallery. *Id.* Plaintiff was also given an initial line of credit of $50,000 to be kept current 30 days after delivery. *Id.* Plaintiff alleges that Marshall entered into this Agreement on behalf of both Marvin and Boddington. *Id.*

Around February 2006, Boddington sold its regional distributorship with Marvin to BMD and BMD assumed the obligations under the distribution agreement with Marvin and the Agreement with Plaintiff. *Id.* ¶ 34.

In 2007, another Marvin window and door dealership, called Solar Glass, Inc. ("Solar Glass"), began using a common warehouse for its multiple locations. *Id.* ¶ 35. This enabled Solar Glass to buy in greater volume and receive price breaks not available to

2

Plaintiff. *Id.*

Plaintiff alleges that he was at a 2007 sales seminar sponsored by Marvin and met several members of the Marvin family. *Id.* ¶ 36. At that time, he disclosed that he was the brother of Bob Sweeney, who had married a Marvin family member but thereafter joined a competing business, causing a rift. *Id.* ¶¶ 26, 28-29, 36. Plaintiff believes that the Marvin family members were disturbed by his presence at the sales seminar after learning of his connection to Bob Sweeney. *Id.* ¶ 36.

Thereafter, he alleges that Marvin and BMD began a series of actions that prejudiced his business and benefitted Solar Glass. He alleges in March or April 2007 he requested a price quote on a job but was told by a sales manager for BMD that Solar Glass was doing the job and BMD would not give him a quote. *Id.* ¶ 37. In June 2007, he alleges that various representatives of BMD and Marvin visited his showroom and indicated that his business was too small and that he needed to add showrooms and personnel. *Id.* ¶ 38. Plaintiff proposed opening a showroom in Summit County, Colorado, but BMD representatives told him that they did not support this. *Id.* ¶ 39. Plaintiff believes that sales leads from Marvin and BMD were given to other dealerships instead of him. *Id.* ¶ 40.

In March 2008, Plaintiff met with Defendant Garrison and Josh Swift of BMD. *Id.* ¶ 42. He stated that he could not make his payments on his account and would have to shut down. *Id.* The BMD representatives agreed to alter the payment terms, thereby inducing Plaintiff to remain in business and continue to purchase Marvin products. *Id.* Plaintiff thereafter reduced his balance due significantly. *Id.*

In early January 2009, Solar Glass opened a Marvin Design Gallery showroom in Boulder, Colorado, which Plaintiff contends is located within 40 miles of his business and

3

therefore violates the Agreement's 50 mile exclusivity guarantee. *Id.* ¶ 43. Around the same time, Marvin also eliminated the price breaks for Marvin Design Galleries. *Id.* ¶ 45.

In February 2009, Plaintiff had a booth at a home and garden show for nine days at the Colorado Convention Center in Denver, Colorado. *Id.* ¶ 46. He alleges that pursuant to the Agreement, Marvin was to provide sales representatives and sales support on behalf of Plaintiff's business. *Id.* He discovered, however, that BMD representatives were distributing their own business cards rather than Plaintiff's cards. *Id.*

On February 18, 2009, Defendant Garrison and Josh Swift told Plaintiff that they would cut off his account if he was late on one payment on his line of credit. *Id.* ¶ 47. On June 30, 2009, Defendant Garrison requested that Plaintiff give him Plaintiff's job quote log. *Id.* ¶ 48. Plaintiff requested two additional quotes for prospective jobs on June 30 and July 1, 2009 but the quotes were not provided. *Id.* ¶¶ 49-50. On July 7, 2009, he requested an extension on his line of credit from Marvin but was turned down; on the same day, Defendant Garrison instructed Plaintiff to cease operations and revoked Plaintiff's dealership authorization for Marvin products because of his inability to pay his account balance. *Id.* ¶¶ 51-52.

Plaintiff's Complaint alleges the following claims: (1) breach of contract against Marvin and BMD; (2) willful breach of contract against Marvin, BMD, and Frank Marvin; (3) breach of implied duty of good faith and fair dealing against all Defendants, including the individual Defendants; (4) interference with prospective business advantage against all Defendants; (5) civil conspiracy against all Defendants; (6) violation of the Sherman Antitrust Act against Marvin and BMD; and (7) violation of C.R.S. § 6-4-101 *et seq.*(state antitrust statute) against Marvin and BMD. Defendants seek dismissal of all claims save

4

the breach of contract claims (Claims 1 and 3) and dismissal of the individual Defendants.

## Standard of Review

A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

"The plausibility standard is not akin to a 'probability requirement,'" but the allegations must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*). Under *Iqbal,* a court considering a motion to dismiss may first identify allegations that are no more than conclusions, and therefore not entitled to the assumption of truth. *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Then, the court may examine the well-pleaded factual allegations and determine, assuming their veracity, "whether they plausibly give rise to an entitlement to relief." *Id.*

## Discussion

1. Tort Claims

Defendants first seek dismissal of Plaintiff's state law tort claims (willful breach of

contract, interference with prospective business advantage, civil conspiracy) on the grounds that they are based on the same facts and duties as the breach of contract claim and are therefore barred by the economic loss rule. They also argue that these claims are not pled with sufficient particularity.

Colorado recognizes the economic loss rule, which provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 865 (Colo. 2005) (citations omitted). To determine whether a claim is barred, the first step is to discern the source of the party's duty. *Id.* "Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property." *Id.* at 865-66. If there is a duty of care independent of contractual obligations, the economic loss rule does not bar tort claims based on that duty. *Id.* at 866.

Defendants argue that Plaintiff seeks the same relief, specifically money damages for economic losses, for his tort and contract claims. In addition, Defendants contend that Plaintiff's tort claims are fundamentally premised on alleged contractual duties.

I look first at Plaintiff's claim of willful breach of contract. As grounds, he incorporates the breaches underlying his breach of contract claim but adds that Marvin and Frank Marvin[1] were motivated by personal dislike of Plaintiff and revenge. Complaint ¶ 67.

---

[1]This claim fails at the outset against Frank Marvin in his individual capacity in that Plaintiff has not alleged any facts that would show the existence of any contract with Mr. Marvin personally, as opposed to with the corporation.

He alleges that BMD's action were motivated by "Plaintiff's previous association with BMD's predecessor as distributor, Boddington, which BMD consider as a competitor with itself." *Id*. Defendants argue that this falls squarely within the economic loss rule and that, moreover, it is doubtful that a cause of action for willful breach of contract even exists any longer under Colorado law. I agree with Defendants that this claim should be dismissed. The Colorado Supreme Court has affirmed that, at least in the insurance context, non-economic damages are available to a plaintiff for a willful and wanton breach of contract. *Giampapa v. American Family Mut. Ins. Co.*, 64 P.3d 230, 240 (Colo. 2003). Here, however, Plaintiff alleges no harm other than economic losses as a result of the conduct he asserts amounts to a breach of contract. In the absence of any allegation of non-economic damages and no independent duties other than contract obligations, his claim for willful breach of contract should be dismissed.

The next tort claim is for interference with prospective business advantage, a recognized tort in Colorado. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo.1995) ("One who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation."). The conduct amounting to the alleged interference must be wrongful or improper. *Id.* at 502.

As grounds for this claim, Plaintiff alleges the following wrongful conduct by Defendants: (1) failing to provide quotes; (2) not promoting Plaintiff's business at the home and garden show; (3) encouraging a sales representative to leave his employment and join

Solar Glass; and (4) preventing Plaintiff from opening a store in Summit County. I agree with Defendants that this claim is barred by the economic loss rule or because the conduct alleged is not wrongful. Any obligation of Defendants to provide quotes and promote Plaintiff's business arise out of the Agreement, not independent duties, and so the claim is barred to the extent it relies on such conduct.[2] Plaintiff's allegations regarding the sales representative are wholly conclusory; he provides no facts to show that any of the Defendants had any role in the representative's career decisions. Moreover, he does not allege any prospective business relationship that was affected by this sales representative's departure. Finally, Plaintiff has not alleged anything improper about the Defendants' alleged refusal to support his opening a store in Summit County. Defendants had no independent legal obligation to supply him at a location they did not wish to support and so I see nothing wrongful in such a decision. If Plaintiff suggests that the Agreement required Defendants to supply him at any store he wished to open then such a claim would be barred by the economic loss rule. Because Plaintiff has not identified any duties independent of his contractual agreement with the Defendants or other conduct amounting to improper interference, I conclude that this claim should be dismissed. *See Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1107-08 (Colo. App.2004) (claims for intentional interference with prospective business advantage based on a landlord's wrongful withholding of consent

---

[2]This claim as asserted against the individual Defendants also fails. All actions taken by the individual Defendants are alleged to have been in their capacities as agents of the various corporate entities acting within the scope of their authority in furtherance of corporate interests, which does not subject them to individual liability. *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003). The individual Defendants had no duties to Plaintiff in their individual capacities to provide him with quotes or assist his business; they were only obligated to do so as representatives of Marvin or BMG.

to an assignment of a lease were barred where the landlord had a duty under the lease not to unreasonably withhold consent).

Plaintiff's final tort claim is for civil conspiracy. Again, Plaintiff's allegations in this regard are conclusory. He simply asserts that there was an agreement and conspiracy among all of the Defendants to eliminate Plaintiff's business but provides no facts to support this key element of the claim. Moreover, the alleged wrongful acts underlying this claim include breaching the Agreement, interfering with Plaintiff's prospective sales advantage, limiting Plaintiff's sales territory, and acting to restrain competition in the window and door industry (the deficiencies in this allegation are discussed further below). Complaint ¶ 87. As noted, these actions either amount to a breach of the alleged Agreement or are simply not wrongful in that they do not violate any other legal duty. Therefore, I agree with Defendants that the civil conspiracy claim should be dismissed.

2. Antitrust Claims

In his sixth and seventh claims, Plaintiff alleges that Defendants have violated both state and federal antitrust law by conspiring to restrain competition. Defendants argue that Plaintiff's allegations are insufficient to establish antitrust violations because Plaintiff does not provide any facts to show a conspiracy or any restraint of trade. Moreover, they contend that since the Defendants are alleged to be agents of each other and/or joint venturers, they cannot have conspired. *See Native American Distributing v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1298 (10th Cir. 2008) (pursuant to "single entity" rule, individuals acting as officers of a single enterprise are not separate economic actors whose actions in concert could give rise to antitrust violations).

Plaintiff's allegations do not meet the pleading requirements set forth by the United

9

States Supreme Court in *Twombly*. 550 U.S. at 557 (to state claim for conspiracy under Sherman Act, "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"). Plaintiff merely alleges the existence of an agreement without providing any facts that would indicate an agreement among the Defendants to illegally restrain trade. *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) ("Bare bones accusations of a conspiracy without any supporting facts are insufficient to state an antitrust claim."). Similarly, he simply alleges that this alleged agreement amounts to an unreasonable restraint of trade but offers no facts regarding the effect on trade. In his reply brief, Plaintiff does not even attempt to justify these claims and essentially confesses Defendants' motion in this regard. Accordingly, I agree that Plaintiff's sixth and seventh claims for relief should be dismissed.

    3.    Individual Defendants

Defendants seek dismissal of the individual Defendants because Plaintiff has not alleged any conduct outside the scope of their official roles within the corporate entities. At this point, the only remaining claims are for breach of contract, asserted against the entities only, and breach of the implied covenant of good faith and fair dealing, asserted against all Defendants. Plaintiff apparently understands that his Agreement, if one exists, is only with the corporate entities. Under Colorado law, every contract contains an implied duty of good faith and fair dealing, violation of which can give rise to a claim of breach of contract. *Mahan v. Capitol Hill Internal Medicine P.C.*, 151 P.3d 685, 690 (Colo. App. 2006). However, outside of the insurance context, there is no independent cause of action for breach of covenant of good faith and fair dealing in the absence of a contract. *Decker v. Browning-Ferris Industries of Colorado, Inc.*, 931 P.2d 436, (Colo.1997) ("A breach of

such a covenant therefore constitutes a breach of an obligation created by the contract rather than breach of an obligation arising independently from the contract."). Because Plaintiff does not allege any contractual relation with the individuals in their personal capacities, the claim for violation of breach of covenant of good faith and fair dealing against the individual Defendants must be dismissed.

Accordingly, it is ordered:

1. Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) (Docket No. 4) is granted. Plaintiff's second, fourth, fifth, sixth and seventh claims for relief are dismissed. Plaintiff's third claim for relief is dismissed as asserted against the individual Defendants.

2. Plaintiff's first and third claims for relief remain pending against Defendants Marvin Windows, Inc., and Building Material Distributors, Inc.

DATED at Denver, Colorado, on October 20, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge